**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VINCENT CIARDULLO,<br><br>                                    Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, *et. al.*,<br><br>                                    Defendants. | Case No.:  24-cv-2091-BJC-AHC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANT WEISS' MOTION TO DISMISS; AND DENYING PLAINTIFF'S SUPPLEMENTAL MOTION FOR SERVICE BY PUBLICATION**<br><br>**[ECF Nos. 52, 56, 62]** |

**BACKGROUND**

Plaintiff Vincent Ciardullo originally filed a complaint on November 11, 2024. ECF No. 1.  He filed a First Amended Complaint ("FAC") on February 17, 2025, asserting claims under 42 U.S.C. § 1983, including deliberate indifference to serious medical needs, failure to properly train, failure to properly supervise and discipline, and a cause of action under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  ECF No. 43.  He also asserts claims for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. and violation of the Rehabilitation Act, 29 U.S.C. §794(a).  *Id.*  Plaintiff alleges, while he was in custody and detained at the Vista Detention Facility ("VDF"),

1

24-cv-2091-BJC-SBC

medical staff failed to provide adequate medical care, leading to him to suffer "repeated reinjuries" to his right leg, and "an ankle sprain on top of the non-union of his tibia and broken metal rod." *Id*. at 3.[1] Plaintiff names the County of San Diego, NaphCare, Peter J. Freeland, Jon Montgomery, William Gore, Kelly Martinez, Anthony Ray, Serina Rognlien-Hood, Stacy Thompson, Richard Rhee, Ana Munoz, Nas Rafi, Emily Mims, Anil Kumar, Samantha Macanlalay, Justin Weiss, Helen Breeler, Christine Sullivan, Nicolaus Rosete, Yaowaluck Hagg, Leah Gache, Pooja Mittal, Juancho Trinidad, Bruce Pastner, Ellen Tanacio, Andrea Medina, Donato Preche, Silva Suaking, Wenyan Boyd, Yvonne Arce, and Jessica Flores as defendants.

On February 28, 2025, Defendant Naphcare and Defendant Correctional Healthcare Partners filed separate motions to dismiss.  ECF Nos. 48, 51.  Defendants Arce, Boyd, County of San Diego, Flores, Gache, Gore, Hagg, Kumar, Macanlalay, Martinez, Medina, Mittal, Montgomery, Munoz, Rognlien-Hood, Suaking, and Tanacio ("County Defendants") filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), on March 3, 2025.  ECF No. 52.  On March 11, 2025, Defendant Weiss filed a motion to dismiss pursuant to Rule 12(b)(6).  ECF No. 56.  Plaintiff filed a response to the motions on April 19, 2025.  ECF No. 59.  On May 3, 2025, Plaintiff filed a motion for service by publication.  ECF No. 62.  Defendants filed replies in support of their motions to dismiss.  ECF Nos. 63-66.

On September 10, 2025, this Court filed an order Granting Defendant Naphcare's motion to dismiss and granting in part Defendant Correctional Health Partner's motion to dismiss.  ECF No. 67.  Although the Court provided Plaintiff an opportunity to amend to address the deficiencies noted, Plaintiff did not amend the FAC.

///

///

---

[1] Page numbers refer to those generated by the CM/ECF system.

## DISCUSSION

**I. Motions to Dismiss**

**A. Legal Standard**

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The allegations must be construed in the light most favorable to the plaintiff. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). While a court must take all factual allegations in the complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In resolving the motion, the court does not weigh evidence, evaluate witness credibility, or consider the likelihood that a plaintiff will prevail at trial. *Bell v. Twombly*, 550 U.S. 544, 556. The Court may consider the facts alleged in the complaint and documents attached to the complaint, when ruling on a motion to dismiss. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001).

**B. County Defendants**

County Defendants argue the FAC should be dismissed for failure to state a claim because (1) the allegations are insufficient to support a claim of deliberate indifference to Plaintiff's serious medical needs; (2) the *Monell* claim also fails because Plaintiff cannot establish deliberate indifference; and (3) there are insufficient allegations to maintain claims for failure to train and failure to supervise.

**1. Deliberate Indifference Cause of Action**

Defendants argue the FAC fails to allege facts to show that the individual defendants acted with deliberate indifference to Plaintiff's medical needs. In his opposition, Plaintiff

24-cv-2091-BJC-SBC

agrees Defendants Kumar, Macanlalay, Boyd, Rodriguez, Gache, Lebbin[2], Tanacio, Medina, Arce, Suaking, and Flores may be dismissed without prejudice. Additionally, Plaintiff agrees the first cause of action for deliberate indifference may be dismissed as to Defendants Gore, Martinez and Rognlien-Hood. ECF No. 59 at 1-2, 50.

Plaintiff does not indicate whether he agrees to dismissal of Defendant Hagg. However, he asserts no argument in opposition to Defendants' request to dismiss the action against Defendant Hagg, and his only allegation regarding Defendant Hagg's conduct is that Defendant Hagg "provided Mr. Ciardullo with an ice pack and noted on records, "[a]mbulate antalgic gait to the R leg, using cane." ECF No. 43 ¶ 67. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (internal citation omitted). The FAC does not allege Defendant Hagg acted with deliberate indifference to Plaintiff's medical needs. Accordingly, the motion is granted as to the first cause of action for all County Defendants.

**2. *Monell* Cause of Action**

County Defendants argue Plaintiff does not allege conduct that rises to the level of deliberate indifference or that any alleged policies were a moving force in delaying follow-up care or surgery. ECF No. 52-1 at 22. They contend Plaintiff attempts to allege a pattern and practice of staff ignoring medical needs, but they argue Plaintiff does not allege how that specific policy resulted in disregarding his medical needs. *Id.* at 23.

Plaintiff argues the FAC sufficiently alleges he was deprived of adequate medical care. ECF No. 59 at 25. He further contends the FAC details other civil actions brought by former inmates and detainees who suffered from inadequate medical care, and whose medical issues and suffering were compounded by inadequate care from jail staff. *Id.* at 25. He maintains the only plausible inference from the allegations is that the County has a

---

[2] Erroneously named as Pooja Mittal in the FAC. ECF No. 52-1 at 16.

24-cv-2091-BJC-SBC

policy, custom, and practice of shortchanging medical services to people entrusted to its care. *Id*. Additionally, he maintains the FAC alleges facts showing the absence of policies that would ensure adequate care in providing walking devices, giving inmates appropriate palliative care, making safety devices available for bathing, or making timely referrals and appointments with outside providers. *Id*. at 26. Plaintiff further argues the FAC pleads sufficient allegations to support the inference that the County's longstanding policy, custom, and practice is the "moving force" behind his deprivation of adequate care. Specifically, he contends the allegations support that he would not have experienced immense pain but for the failures of medical staff to give him devices to keep weight off his leg, ice, a bone stimulator, prescribed anti-infection medicine or a timely referral for surgery. *Id*.

A municipality cannot be held vicariously liable for the acts of its employees under § 1983, but may be held liable for a civil rights violation caused by a policy, custom or practice. *Monell*, 436 U.S. at 691. To properly state a *Monell* claim, a plaintiff must allege facts demonstrating: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)); see also *Monell*, 436 U.S. at 690-91. A policy amounts to "deliberate indifference" when the need for more or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 389. "[A] claim of municipal liability under Section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice.'" *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (quoting *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621,

624 (9th Cir. 1988)).

Plaintiff alleges, on or about November 6, 2022, he fractured his "right leg (tibia)" and had surgery to correct the fracture on November 17, 2022. ECF No. 43 ¶¶ 29-30. On or about November 30, 2022, Plaintiff was arrested in connection with a probation violation, booked into VDF, and later sentenced to two years in county jail. *Id.* ¶¶ 31-32. During the course of his arrest, Plaintiff alleges that his girlfriend notified an officer of his injuries and provided him with Plaintiff's medical records. *Id.* ¶ 33. Plaintiff also alleges that he notified Defendants Kumar, Rodriguez, and Thompson of his leg injury as part of his intake process, and notes of his condition were added to his medical record. *Id.* ¶ 34. Additionally, Plaintiff alleges VDF obtained his medical records regarding his leg injury. *Id.* ¶ 36. Despite letting VDF staff know of his injury, Plaintiff alleges that there was "no written plan to provide care" based on his medical needs, which violated California Code of Regulations, Title 15 § 1207. *Id.* ¶¶ 37–38. From November 30, 2022 to March 14, 2023, Plaintiff was placed in medical housing and provided a walker. *Id.* ¶ 46. Plaintiff was seen by medical staff several times from December 7, 2022 through March 4, 2023. *Id.* ¶¶ 40-45. On March 2, 2023, Plaintiff went to HCH Physical Therapy for a physical therapy appointment and was advised to see an orthopedic surgeon. *Id.* ¶ 44. Plaintiff alleges this recommendation and treatment notes from this appointment were provided to VDF. *Id.* On March 4, 2023, Defendant Boyd conducted an ADA Function Performance Test on Plaintiff and noted that Plaintiff needed "assistance with walking, mobility, and bathing." *Id.* ¶ 45.

On March 14, 2023, Plaintiff was released from medical housing and put in general population, and Plaintiff complained that he still had pain and mobility issues. *Id.* ¶ 47. Plaintiff alleges that while in general population from March 2023 to April 2023, he was not provided any walking aids or accessible shower facilities despite continually requesting them. *Id.* ¶¶ 48, 51. Without the use of any aid for walking and standing, Petitioner alleges he placed weight on his leg, causing pain and swelling. *Id.* ¶ 49. He made sick-call requests for pain, swelling, and to seek a cane and ice packs. ¶¶ 48, 53-55. During a sick-call visit

6

on March 26, 2023, Plaintiff explained he believed his leg was rebroken, but the nurse did not refer him for an x-ray. *Id*. ¶ 56. During a visit with Defendant Rafi on March 27, 2023, Plaintiff alleges he complained about immense pain. *Id*. ¶ 57   Plaintiff further alleges the doctor ignored his pain, noted there was no medical indication for cane or ice packs, and ordered an x-ray. *Id*. On March 29, 2023, Defendant Rafi ordered an additional lab and noted that Plaintiff's surgery hardware was in place.   *Id*. ¶ 58.   On April 22, 2023, an additional exam was conducted by Defendant Rosete, who confirmed that the hardware placed in Plaintiff's leg during his surgery had broken. *Id*. ¶ 60.

Sometime in May 2023, Plaintiff slipped and fell in the shower. *Id*. ¶ 66. Plaintiff was taken to University of California, San Diego Health ("UCSD"), where medical staff confirmed Plaintiff's surgery hardware was broken and stated that he would require an additional surgery. *Id*. ¶ 69. Plaintiff alleges that even after being on notice that the surgery hardware in his right leg was broken, he was placed back into general population without walking assistive devices. *Id*. ¶¶ 65, 70. Plaintiff alleges he made several sick-call requests complaining that his leg was broken and that he was in pain. *Id*. ¶¶ 67, 68, 71, 72, 74, 77-79. Plaintiff believes that VDF's delay in treating him was due to VDF failing to request Plaintiff's medical records from UCSD. *Id*. ¶ 82.

On July 18, 2023, Plaintiff was admitted to UCSD and had surgery to repair his leg. *Id*. ¶ 86. On August 4, 2023, Plaintiff returned to VDF, where medical staff failed to follow postoperative instructions, including failing to provide him with required antibiotic medications. *Id*. ¶ 89. He alleges VDF has no policy on the administration of medication prescribed by an outside hospital, and the lack of policy led to the unconstitutional conduct of denying him prescribed antibiotics. *Id*. ¶ 93. On August 9, 2023, Plaintiff alleges he was seen at Temecula Valley Hospital, which confirmed his surgical wound was infected. *Id*. ¶ 94.

Plaintiff alleges the County had a policy and practice of failing to order diagnostic testing and failing to refer incarcerated individuals to specialists when medically necessary. *Id*. ¶ 161. Specifically, Plaintiff alleges the County fails to adequately train staff as to when

24-cv-2091-BJC-SBC

and under what circumstances to order diagnostic testing, and the policies for referrals to specialists are inadequate. *Id*. Plaintiff also alleges the County lacked a policy and practice to ensure that contracted individual providers were exercising appropriate skill and care. *Id*. ¶ 164. Because there was no policy or procedure requiring referral to a specialist when a broken bone or broken hardware is detected through an x-ray, Plaintiff alleges he was left to suffer for almost two months until he was taken to UCSD, at which time the specialist determined he needed surgery. *Id*. ¶¶ 166, 175. Additionally, Plaintiff asserts the County also fails to provide adequate medical follow-up treatment to incarcerated people when they return to custody from receiving outside medical specialists. *Id*. ¶¶ 177, 182.

The Court finds Plaintiff sufficiently alleges he possessed a constitutional right to adequate medical care of which he was deprived. He alleges he had surgery only 13 days before being in custody at VDF and needed an orthopedic follow-up and assistance with walking, mobility, and bathing, but he was moved to general population without walking aids or shower assistance. Additionally, Plaintiff alleges he made several sick calls regarding the pain he was experiencing due to the lack of mobility aids and after slipping in the shower, but Defendants kept him in general population without walking assistive devices. He also alleges Defendants failed to provide prescribed antibiotics post-surgery.

Plaintiff also sufficiently alleges the county lacked policies for diagnostic testing and referrals to specialists and providing follow-up care after an incarcerated person receives treatment from outside specialists. The allegations show that the lack of policies resulted in him rebreaking his leg and having to endure extreme pain as his treatment was delayed. Additionally, his allegations demonstrate the lack of policy regarding follow-up treatment resulted in his infection. Plaintiff also alleges County Defendants should have been aware that the lack of policies would result in serious injury as demonstrated by the harm caused to other incarcerated individuals. *See* ECF No. 43 170-181. Accordingly, Plaintiff sufficiently states a *Monell* claim against the County. The motion to dismiss is denied as to the second cause of action.

///

24-cv-2091-BJC-SBC

**3.  Failure to Train Cause of Action**

Defendants argue Plaintiff's FAC fails to state a viable claim against Defendants Gore, Martinez, Montgomery, and Rognlien-Hood for failure to train.  ECF No. 52-1 at 24. They maintain Plaintiff alleges that Defendants Gore and Martinez failed to maintain adequate and proper training necessary to educate medical staff, but they were sheriffs, not individuals with medical knowledge and have no personal involvement in training medical staff.  *Id*.  Additionally, County Defendants contend Sheriff Gore retired before the events giving rise to this lawsuit.  County Defendants also argue Plaintiff fails to provide facts to demonstrate Rognlien-Hood's and Montgomery's personal involvement in failing to provide medical training to the specific nurses and county employees working at VDF.  *Id*. They further argue that there are no facts that demonstrate a causal link between Rognlien-Hood and Montgomery, and their alleged failures to train.  *Id*.  Specifically, they argue Plaintiff cannot provide facts as to what training did not occur, and how Defendants Rognlien-Hood and Montgomery were personally linked to any alleged training failures. *Id*. at 24-25.

Plaintiff argues Defendants are properly sued in their capacity as individuals possessing supervisory powers over the untrained medical staff whose conduct amounted to the denial of adequate care.  ECF No. 59 at 35.  He contends County Defendants frame the issue incorrectly.  *Id*.  He maintains the FAC sufficiently alleges that Defendant Rognlien-Hood, as the Director of Nursing, failed to maintain adequate and proper training for the staff.  *Id*. at 36.  Plaintiff further argues the failure to provide him care for months demonstrates staff was not properly trained on how to evaluate and address his medical needs.  *Id*.

Plaintiff also argues Defendant Montgomery, the Chief Medical Officer, was responsible for overseeing the Medical Services Division at the jail and for "development and implementation of quality assurance" and supervising all medical staff.  *Id*. at 37. Plaintiff contends the reasonable inference to be drawn from the failure to provide Plaintiff with adequate medical care on several occasions is that Defendant Montgomery, who was

9

24-cv-2091-BJC-SBC

responsible for the medical program, failed to ensure the staff had adequate training that would have avoided the pain and complications that Plaintiff endured.  *Id*. at 37-38.

Plaintiff further argues Defendants Gore and Martinez, as the leaders of the Sheriff's Office with ultimate authority over operation of the jails, failed to provide a training program for medical staff.  *Id*. at 38-39.  He maintains the history of inadequate care received at the jails show that they did not implement, or require implementation of, appropriate training to safeguard the constitutional rights and ensure the adequate care of inmates.  *Id*. at 39.

A supervisor may be held liable for failure to train if the plaintiff shows "that the official was 'deliberately indifferent to the need to train subordinates, and the lack of training actually caused the constitutional harm or deprivation of rights.'"  *Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (quoting *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1159 (9th Cir. 2014)).  To properly state a claim, the plaintiff must allege facts to show that the official disregarded the known or obvious consequence that lack of a particular training program would cause employees to violate individuals' constitutional rights.  *Id*. (quoting *Connick v. Thomspon*, 563 U.S. 51, 61 (2011)).

Plaintiff alleges Defendants Gore and Martinez served as the Sheriff, at different times relevant to the FAC, with the responsibility of "overseeing all assistant sheriffs, commanders, directors, and executive staff of the San Diego County Sheriff's Office, which includes those staff tasked with overseeing operations at VDF."  ECF No. 43 ¶ 5. He also alleges Defendant Rognlien-Hood was the Director of Nursing for the Sheriff's Office, and, in that capacity, she was responsible for overseeing all nursing staff at the Sheriff's Office facilities, including VDF.  *Id*. ¶ 6.  He alleges Defendant Montgomery was the Chief Medical Officer for the Sheriff's Office and was responsible for overseeing the Medical Services Division at the San Diego County Jail, including the "development and implementation of quality assurance and utilization review policies and procedures."  *Id*. ¶ 13.  Plaintiff alleges Defendants Gore, Martinez, Rognlien-Hood and Montgomery failed to train staff when it is appropriate to refer individuals to outside providers, when

24-cv-2091-BJC-SBC

diagnostic testing is required, and when diagnostic testing reveals conditions that require surgical repair. *Id*. ¶¶ 193, 194. He also alleges Defendants were aware this training was necessary to avoid serious injuries based upon the harm caused other incarcerated individuals when staff failed to refer them to outside providers or for diagnostic testing. *Id*. ¶¶ 193, 198. As a result of their failure to properly train staff, Plaintiff alleges he was provided inadequate medical care and suffered a serious injury, months of unnecessary pain, and an infection. *Id*. ¶¶ 194, 197, 199, 202, 205-207. Plaintiff's allegations show Defendants knew incarcerated individuals had been harmed as a result of inadequate training in the past, they disregarded the obvious risk of harm to other incarcerated individuals by failing to provided appropriate training, and the lack of training resulted in Plaintiff's injury. The Court finds Plaintiff sufficiently alleges a claim for failure to train against Defendants Montgomery, Rognlien-Hood, Gore and Martinez. The motion to dismiss is denied as to this claim.

**4. Failure to Supervise and Discipline Cause of Action**

County Defendants argue Plaintiff's failure to supervise and discipline claim fails to provide specific facts regarding personal involvement of the County, Gore, Martinez, Rognlien-Hood, or Montgomery. ECF No. 52-1 at 25. They further argue the claim relies wholly on a National Commission on Correctional Healthcare ("NCCHC") report. *Id*. They maintain Plaintiff does not and cannot allege that NCCHC standards create a constitutional floor, and the FAC fails to allege facts regarding the constitutional standards. *Id*. Additionally, they argue Plaintiff does not provide facts to indicate who or which entity is directly responsible for supervising Defendants Weiss and Rhee, and Plaintiff fails to provide sufficient facts to indicate their acts rise to the level of deliberate indifference. *Id*. at 25-26.

Plaintiff argues Defendants Rognlien-Hood and Montgomery were principal medical officials with responsibility over the nursing staff and medical-care operation for the jails. ECF No. 59 at 42. He maintains, as trained medical professionals, they understood that inadequate care could result in harm to an inmate, they were aware of the

24-cv-2091-BJC-SBC

multiple different lawsuits brought by inmates alleging inadequate care, and they were likely aware of the deficiencies identified by the NCCHC. *Id*. at 42-43. Plaintiff contends the FAC alleges no actual supervision or discipline ever occurred as the "Responsible Health Authority" for the jail was rarely onsite. *Id*. at 43. He further contends the FAC alleges that Defendant Thompson exercised the most authority of the nurses who provided treatment to Plaintiff, and there is no indication that anyone was supervising her or that she had ever been disciplined for her mistreatment of Plaintiff. *Id*. Plaintiff asserts the allegations provide that the County, and the supervisory defendants failed to implement supervision that would have avoided the harms he suffered. *Id*.

Under § 1983, a supervisor can be held liable in his or her individual capacity if (1) the supervisor was "person[ally] involve[d] in the constitutional deprivation," or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).

In support of his claim for failure to supervise and discipline, Plaintiff alleges the "Responsible Health Authority" was not onsite weekly as recommended by the NCCHC. ECF No. 43 ¶ 210. Plaintiff also alleges Defendants "condoned and acquiesced in the abusive behavior of their subordinates by refusing to retrain them, discipline them, or correct their abusive behavior." *Id*. ¶ 215. Additionally, Plaintiff alleges Defendants were aware, or should have been aware, that the inadequate policy regarding supervision and discipline of those violating inmates' civil rights was so obvious that it would result in additional incidents of lawless conduct by Defendants' subordinates. *Id*. ¶ 216. He asserts the failure to supervise and discipline were the moving forces behind the inadequate medical care, and the pattern of failing to investigate staff misconduct led to him receiving inadequate medical care. *Id*. ¶¶ 217-218. He further alleges Defendants Gore, Martinez and Ray were aware of the failures but took no action, and Defendant Martinez refused to provide access to County investigations of misconduct. *Id*. ¶¶ 219, 220. Plaintiff also alleges the County failed to properly supervise Defendants Weiss and Rhee, who failed to identify that Plaintiff's tibia did not heal correctly and the steel rod implant broke when

24-cv-2091-BJC-SBC

they reviewed x-rays of his leg. *Id.* ¶ 221. He further alleges that had the County conducted any appropriate supervision, they would have learned of the "incompetence" and would have alerted Defendants to the fact Defendant Rhee used the National Provider Index number of another radiologist. *Id.* He further alleges when UCSD medical professionals recommended corrective surgery, Defendant County of San Diego should have disciplined them but failed to do so. *Id.* Plaintiff further alleges Defendants' failure to investigate led to the misconduct by medical staff and was the moving force behind the inadequate medical care provided. *Id.* ¶¶ 223-225. The FAC is devoid of specific non-conclusory allegations showing the personal involvement of Defendants Gore, Martinez, Rognlien-Hood, or Montgomery in failing to supervise and discipline. Accordingly, the motion to dismiss is granted as to this claim.

**B. Defendant Weiss' Motion**

Defendant Weiss seeks dismissal of the FAC for failure to allege sufficient facts to state a claim for deliberate indifference against him. Specifically, he argues the allegations do not show that he denied, delayed, or intentionally interfered with Plaintiff's medical treatment. ECF No. 56 at 9. He further argues any allegation that Plaintiff should have received additional or different treatment is insufficient to support a claim under the Eighth Amendment. *Id.*

In opposition, Plaintiff argues the FAC alleges Defendants Weiss and Rhee, medical professionals with experience in radiology, missed that he reinjured his leg despite Plaintiff's complaints of extraordinary pain and the fact it was swollen with a lump at the surgery site. ECF No. 59 at 22. He further argues the FAC alleges his condition worsened over the course of his time at VDF, but Defendant Weiss repeatedly signed off on studies of his leg that likely showed its worsening condition. *Id.* He maintains the allegations support the inference that Defendant Weiss did not care to review the studies or to outsource his work to a doctor capable of doing the job. *Id.*

A plaintiff alleging deliberate indifference must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further

24-cv-2091-BJC-SBC

significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (citing *Estelle*, 429 U.S. at 104) (internal quotation marks omitted). Second, he "must show the defendant's response to the need was deliberately indifferent." *Id*. This second prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*.

In the FAC, Plaintiff alleges Defendant Weiss, a doctor at VDF, provided radiology services to Plaintiff. ECF No. 43 ¶¶ 7, 10. Defendant Weiss signed off on lab results on December 25, 2022, January 10, 2023, January 29, 2023, and March 29, 2023. *Id*. ¶¶ 41-43, 58. Plaintiff asserts Defendant Weiss did not review the x-rays and related radiology materials appropriately, which resulted in the failure to identify issues in Plaintiff's leg. *Id*. ¶ 154. He alleges Defendant Weiss failed to identify a single issue with his leg, which contributed to Plaintiff receiving no appropriate care from VDF staff. *Id*.

Plaintiff sufficiently alleges a serious medical need based upon his significant pain and that he rebroke his leg. However, Plaintiff's allegations regarding Defendant's Weiss' review of the radiology materials demonstrate Defendant Weiss potentially engaged in negligent misdiagnosis. Negligence in diagnosis and treatment is not sufficient to state a claim for deliberate indifference. *Estelle*, 429 U.S. 97, 106 (1977) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The allegations do not support Defendant Weiss knew of and disregarded an excessive risk to his health. Accordingly, Plaintiff fails to state a claim against Defendant Weiss, and the motion to dismiss is granted.

## II. Motion for Service by Publication

In an order filed on April 25, 2025, this Court denied Plaintiff's motion to permit service by publication and substitution on Defendant Rhee without prejudice. ECF No. 61. The Court found Plaintiff satisfied the due diligence requirement for service by publication but determined Plaintiff failed to demonstrate the existence of a claim. *Id*. at 3, 4; CAL. CIV. PROC. CODE § 415.50(a).

14

24-cv-2091-BJC-SBC

In his renewed motion to serve Defendant Rhee by publication, Plaintiff provides the sworn statement of Caitlin Ashton, a licensed private investigator to support the existence of a claim.  Ms. Ashton attests to reviewing Plaintiff's medical records from the Sheriff's Office, investigating Defendant Rhee's whereabouts and interviewing Defendant Weiss and Plaintiff.  ECF No. 62; 62-1.  Plaintiff contends the Court can conclude that Plaintiff had a "serious medical need" and there is a plausible basis to believe Dr. Rhee demonstrated deliberate indifference.  ECF No. 62 at 4, 5.  He maintains the facts set forth in Ms. Ashton's declaration show that Defendant Rhee did not note that the hardware in Plaintiff's leg had broken, identified no issues on the x-ray, and misappropriated the National Provider Index number of another doctor with the same name.  *Id.*

The Federal Rules of Civil Procedure allow service of process as permitted by "state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  FED. R. CIV. P. 4(e)(1).  California permits service by publication "if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in" Article 3 of the California Code of Civil Procedure. CAL. CIV. PROC. CODE § 415.50(a).  In addition to a showing of diligence, California law requires a party seeking service by publication to show that "[a] cause of action exists against the party upon whom service is to be made" or "[t]he party to be served has or claims an interest in real or personal property in this state that is subject to the jurisdiction of the court or the relief demanded in the action consists wholly or in part in excluding the party from any interest in the property." CAL. CIV. PROC. CODE § 415.50(a)(1)-(2).

Plaintiff relies solely on the declaration of Ms. Ashton who attests to reviewing Plaintiff's medical records.  In her declaration, Ms. Ashton notes that Defendant Rhee evaluated an x-ray on June 16, 2023, and observed "[d]istal tibial and fibular fixation hardware" but identified no issues with the bones or tissues.  ECF No. 62-1.  There is no additional information on Defendant Rhee's conduct surrounding Plaintiff's treatment.

24-cv-2091-BJC-SBC

This single interaction does not sufficiently demonstrate a "cause of action" exists against Defendant Rhee for purposes of establishing that the Court has jurisdiction over this matter to issue an order granting Plaintiffs' motion to effect service by publication. Accordingly, Plaintiff's motion is denied.

## CONCLUSION AND ORDER

Based on the foregoing, the Court GRANTS IN PART AND DENIES IN PART County Defendants' motion to dismiss. The motion is GRANTED as to the first cause of action for deliberate indifference and the fourth cause of action for failure to supervise and discipline. The motion is otherwise DENIED. Defendant Weiss' motion to dismiss is GRANTED. Plaintiff may file an amended complaint addressing the noted deficiencies **on or before April 17, 2026.** Plaintiff's renewed motion to permit service by publication is DENIED.

**IT IS SO ORDERED**.

Dated: March 25, 2026

Honorable Benjamin J. Cheeks
United States District Judge

24-cv-2091-BJC-SBC